**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL NO. 564, | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. G-05-263 |
| THE DOW CHEMICAL COMPANY, | § | |
| Defendant. | § | |

**ORDER GRANTING DEFENDANT DOW CHEMICAL COMPANY'S MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 564'S MOTION FOR SUMMARY JUDGMENT AND AFFIRMING THE ARBITRATION AWARD**

This dispute arises out of an arbitration proceeding between the Parties. Plaintiff International Union of Operating Engineers, Local No. 564 ("the Union") brought suit against Defendant Dow Chemical Company ("Dow") pursuant to § 301 of the Labor Management Relations Act of 1947 ("LMRA"), codified at 29 U.S.C. § 185, seeking to vacate the Arbitration Award ("Award"). The Union filed its Motion for Summary Judgement urging this Court to vacate the Arbitration Award on the ground that the Arbitrator exceeded his authority under the Collective Bargaining Agreement ("CBA"). Dow filed its Motion for Summary Judgment requesting that the Court affirm the Arbitration Award and dismiss this action in its entirety with prejudice. For the reasons articulated below, the Court hereby **GRANTS** Dow's Motion for Summary Judgment, **AFFIRMS** the Arbitration Award, and

respectfully **DENIES** the Union's Motion for Summary Judgment.[1]

## I. Background

### *A. Nature of the Jurisdictional Dispute Giving Rise to Arbitration*

Dow's Texas Division in Freeport, Texas ("Freeport facility"), manufactures chemicals and related products. The Freeport facility is Dow's largest manufacturing operation, and it employs about 5,500 workers, of which, approximately 956 are Union members. About 215 employees are represented by other unions. Of the 4,000-plus nonunion employees at the Freeport facility, approximately 250 are operations employees. These workers perform the same operations functions as the Union workers, in addition to other functions. The nonunion operations employees have historically been referred to as "technicians" while the union operations employees have been referred to as "operators."[2]

The Award in this case concerns the Union's jurisdiction over jobs at Dow's Stratton Ridge site, which is part of Dow's Freeport facility. The Stratton Ridge site is located several miles from the rest of the Freeport facility, but the Freeport and Stratton Ridge operations are interdependent. All of the plants that make up the Freeport facility are connected by pipe systems that allow for the movement of chemicals between facilities. Historically, two Dow Chemical businesses have been responsible for running the Stratton Ridge site: the Hydrocarbons and Energy business, and the Chlor-Alkali business. Both businesses have employed workers in operations work, and both rely on the massive natural salt domes (essentially gigantic caverns lined with salt) that exist at Stratton Ridge. The Hydrocarbons and Energy business has been performed by non-union technicians since 1973, and

[1]The Court does not consider this Order worthy of publication. Accordingly, it has not requested and does not authorize publication.

[2]The Court will use these historical terms for purposes of analyzing the Parties' Motions.

it involves the storage of hydrocarbon chemicals in underground storage facilities. It has generally been the work of 12 non-union technicians. The Chlor-Alkali business has been engaged in the production of brine, which is used in the Freeport facility's chemical production and is also used to maintain the structural integrity of the natural salt domes beneath the Stratton Ridge site. It has generally been the work of seven union operators.[3]

Although the two businesses were technically separate, experience showed that the Hydrocarbon and Chlor-Alkali operations were intertwined, and the artificial separation of the two businesses created safety concerns. The Union does not dispute any of the evidence Dow presented at Arbitration or in its Motion for Summary Judgment on the issue of safety problems arising out of the dual operations. In June 2003, Dow merged the two businesses, and the entire Stratton Ridge facility was run by a new business called "Mining, Storage and Pipeline." On September 2, 2003, Dow notified the Union that Dow was going forward with its plan to consolidate the Hydrocarbon and Chlor-Alkali operations, which included removing the operator positions from the bargaining unit and making them technician (non-bargaining unit) positions. On September 3, 2003, the Union served a letter to Dow alleging that this action was a violation of Article II, the jurisdiction clause of the CBA, and that the Union was invoking its right under Article III of the CBA to arbitrate the case.

*B. Relevant Provisions of the CBA Between Dow and the Union*

The relevant inquiry is whether the arbitrator exceed his authority when he upheld the permanent removal of operator positions from the Union's jurisdiction. To answer this question, the Court must first look to the language of the CBA, which governed the relationship between the Union and Dow. Relevant provisions of the CBA are reproduced in part here:

---

[3]At some point, an additional bargaining unit position was contemplated, but the summary judgment evidence indicates that it was never filed.

**Article II**
**Jurisdiction**

The parties hereto recognize that certain work comes within the jurisdiction of the UNION and only in cases of emergency may employees, other than those represented by the UNION be assigned to work within this recognized jurisdiction. The UNION also recognizes that in a production plant of this kind, the principles of jurisdiction must be applied with common sense and some flexibility in order to give the proper consideration to the practical problems of production involved. Accordingly, the UNION agrees to apply a rule of reason consistent with the above circumstances in connection with jurisdictional questions arising under this contract. In a further effort to eliminate jurisdictional questions, the parties agree that for the purposes of this article an emergency shall be a fire, explosion, flood, hurricane, storm, line rupture, or power failure which requires immediate action, or any condition which endangers life, health, or property.

This Article is not to be construed to prevent the COMPANY from using technical employees as operators on experimental semi-plant work. Operators will not be replaced by technical employees on a job being performed by an operator on a routine regularly scheduled basis in an experimental semi-plant except when necessary to do so for the purpose of determining technical information needed for the research project.

**Article III**
**Jurisdictional Disputes**

In the event a dispute arises between the signatory UNION and one or more Unions having bargaining rights for another group of employees of the COMPANY as of the date of the signing of this contract with reference to jurisdiction over work to be performed at this plant by employees of the COMPANY, such dispute shall, subject to the provisions hereinafter set forth, be settled by these Unions in accordance with their established procedure governing the settlement of jurisdictional disputes. If, however, these Unions fail to settle such jurisdictional dispute within 14 days after the dispute arises, the UNION shall fully inform the COMPANY regarding its stand in the dispute and such dispute shall then, at the request of the UNION be settled by arbitration as provided in the article of this contract entitled "Arbitration."

If the dispute is between the signatory UNION, on the one hand, and the COMPANY, or any employees of the COMPANY, or any Union which does not have bargaining rights in this plant as of the date of the signing of this contract, on the other hand, and a satisfactory settlement cannot be otherwise affected, the Arbitration Procedure hereinafter provided by be invoked by the UNION....

**Article XIX**
**Arbitration Procedure**

> ...It is also agreed that the case will be presented to the impartial arbitrator on the earliest possible date and his/her decision will be final and binding upon both parties to this agreement. Such decision shall be within the scope and terms of this agreement and shall not change any of its terms or conditions. The arbitrator shall in his/her decision specify whether or not the decision is retroactive or the effective date thereof....

The Court finds that the CBA clearly vests the authority to resolve jurisdictional disputes such as the one in the instant case with an arbitrator. The Court next turns to the substance of the Arbitration Award itself.

*C. The Arbitration Award*

On November 12, 2004, arbitrator Bruce Ponder ("Arbitrator") issued an Award that rejected the Union's jurisdictional challenge and ruled in favor of Dow. The Arbitrator characterized the issue before it as follows: "Did the employer violate the collective bargaining agreement's jurisdictional clause when it consolidated functions of its hydrocarbon operations and its brine operations at the Stratton Ridge site in Freeport, Texas, in light of the performance of the brine operations historically by members of the [U]nion bargaining unit?"

The Arbitrator found that during the relevant periods of the CBA and the during the course of the bargaining history of the parties, that the affected jobs in the Chlor-Alkali unit were exclusively within the jurisdiction of the Union. In interpreting the CBA, the Arbitrator noted that under the terms of that agreement, the Union recognized that "in a production plant of this kind, the principles of jurisdiction must be applied with *common sense and some flexibility* in order to give the proper consideration to the practical problems of production involved. Accordingly, the UNION agrees to apply a *rule of reason* consistent with the above circumstances in connection with jurisdictional questions arising under this contract." (emphasis added). The Arbitrator then concluded that "the 'rule of reason' language...is the Union's concession to the safety problems inherent in the petrochemical

industry... [and] ...[t]he language of that paragraph makes clear that emergency...is the subject of the rule-of-reason language. The rule of reason and 'common sense and flexibility' recognize that temporary invasions of the bargaining unit jurisdiction must occur to assure that safety-related problems are dealt with quickly and with maximum management flexibility." He then found that the issue of safety was an avowed company purpose that could overcome the jurisdictional restrictions imposed by Article II of the CBA, and that Dow's consolidation of the operations at the Stratton Ridge facility did not violate Article II of the CBA. He gave two reasons in support of his finding. First, that Dow's safety concerns were compelling. Second, that the consolidation eliminated jobs that constituted less than one percent of the Union's jurisdiction, which he found to be de minimis. He further indicated that were both factors not present in the present jurisdictional dispute, he would have likely found that the consolidation would have violated the jurisdictional clause of the CBA.

On May 9, 2005, the Union filed its Complaint against Dow to Vacate the Arbitration Award At the scheduling conference held on August 3, 2005, the Parties and the Court agreed that there are no disputed material facts, and that all the questions remaining before the Court are purely legal. Therefore, the appropriate resolution of this case is on motions for summary judgment.

## II. Legal Standards

### *A. Summary Judgment Standard*

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552–53, 91 L. Ed. 2d 265 (1956). The party moving for summary judgment bears the initial burden of "informing the district court the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. The non-moving party must come

forward with "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). The court must view all evidence in the light most favorable to the non-movant. *See, e.g.*, *Broussard v. Parish of Orleans*, 318 F.3d 644, 650 (5th Cir. 2003), *cert. denied* 539 U.S. 915, 123 S. Ct. 2276, 156 L. Ed. 2d 130 (2003).

If the evidence would permit a reasonable fact finder to find in favor of the non-moving party, summary judgment should not be granted. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S. Ct. 2512. Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See id.* at 255, 106 S. Ct. at 2513.

*B. Standard of Review for Determining If the Arbitration Award Exceeded the Arbitrator's Authority*

This Court has jurisdiction to review this arbitration proceeding pursuant to 29 U.S.C. § 185. However, the Court's review is extremely narrow in its scope. *See Beaird Industries, Inc. v. Local 2297, International Union*, 404 F.3d 942, 945 (5th Cir. 2005) ("Where, as here, an arbitration decision arises from the terms of a CBA, judicial review is narrowly limited."); *Kergosien v. Ocean Energy, Inc.*, 390 F.3d 346, 352 (5th Cir. 2004); *Delta Queen Steamboat Co. v. District 2, Marine Eng'rs Beneficial Ass'n*, 889 F.2d 599, 602 (5th Cir. 1989). The Court cannot vacate an arbitration award as long as the award "draws its essence from the collective bargaining agreement" and is not based on the Arbitrator's "own brand of industrial justice." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S. Ct. 1358, 1361, 4 L. Ed. 2d 1424 (1960).

*See Beaird Indus.*, 404 F.3d at 944 (quoting *Weber Aircraft Inc. v. Gen. Warehousemen & Helpers Union Local 767*, 253 F.3d 821, 824 (5th Cir. 2003)). "In applying the 'essence' test, we have declared that an arbitrator's award 'must have a basis that is at least rationally inferable, if not obviously drawn, from the letter or purpose of the collective bargaining agreement.'" *Houston Lighting & Power Co. v. Int'l Bhd. of Elec. Workers, Local Union No. 66*, 71 F.3d 179, 183 (5th Cir. 1995) (quoting *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1325 (5th Cir. 1994)). "The 'essence' standard is to be interpreted expansively so as to uphold the award, rather than restrictively." *Int'l Ass'n of Machinists and Aerospace Workers Dist. 776 v. Texas Steel Co.*, 538 F.2d 1116, 1121 (5th Cir. 1976) (citing *United Steelworkers v. United States Gypsum Co.*, 492 F.2d 713, 731–32 (5th Cir. 1974)). This Court must affirm the award if "the Arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38, 108 S. Ct. 364, 371, 98 L. Ed. 2d 286 (1987). The Fifth Circuit has repeatedly stated that an arbitration award should "not be vacated unless: (1) the award was procured by corruption, fraud, or undue means; (2) there is evidence of partiality or corruption among the arbitrators; (3) the arbitrators were guilty of misconduct which prejudiced the rights of one of the parties; or (4) the arbitrators exceeded their powers." *Gateway Technologies, Inc. v. MCI Telecommunications Corp.*, 64 F.3d 993, 996 (5th Cir. 1995). *See Manville Forest Prods. Corp. v. United Paperworkers Int'l Union, AFL-CIO*, 831 F.2d 72, 74 (5th Cir. 1987). That the Court might interpret the contract differently is not grounds for overruling the Arbitrator's decision. *See Beaird Indus.*, 404 F.3d at 944. So long as the Arbitrator has not exceeded his authority, this Court may not vacate the resulting award even if it is convinced that the arbitrator committed a serious error. *See United Paperworkers*, 484 U.S. at 38, 108 S. Ct. at 371.

  In crafting an arbitration award, an arbitrator may look for guidance from many sources so long

as the collective bargaining agreement serves as the foundation of his award. *See Enterprise Wheel*, 363 U.S. at 597, 80 S. Ct. at 1361. However, this Court is charged with a duty "to scrutinize the award to ensure that the arbitrator acted in conformity with the jurisdictional prerequisites of the collective bargaining agreement." *Delta Queen*, 889 F.2d at 602. Vacating an award is the appropriate remedy if an arbitrator exceeds the contractual authority granted to him by the collective bargaining agreement. 9 U.S.C. § 10(a)(4). "[W]here the arbitrator exceeds the express limitations of his contractual mandate, judicial deference is at an end." *Delta Queen*, 889 F.2d at 602. Specifically, this Court will vacate an arbitration award that is contrary to the express and plain language of the collective bargaining agreement. *See Gulf Coast Indus. Workers v. Exxon Chem. Americas*, 863 F. Supp. 423, 426 (S.D. Tex. 1994) (citing *Interstate Brands Corp., Butternut Bread Div. v. Chauffeurs, Teamsters, Warehousemen and Helpers Local Union No. 135*, 909 F.2d 885, 889 (6th Cir.1990)).

**III. Analysis**

The primary issue that must be addressed by the Court on the Parties' Cross-Motions for Summary Judgment is whether the Arbitrator exceeded his authority and ignored the express language of the CBA in deciding that Dow's reorganization of the Stratton Ridge facility, resulting in the elimination of bargaining unit positions, did not violate the jurisdictional clause of the CBA.

The Union urges this Court to vacate the arbitration award, arguing that the Arbitrator changed the express terms and conditions of the CBA in two ways. First, he allowed for the assignment of bargaining work to non-bargaining employees for a non-specified emergency reason. Second, he allowed for the permanent removal of such jobs when the CBA only provided for assignment of bargaining work to non-bargaining unit employees for the duration of the emergency. Under the Union's interpretation of the contract, safety issues such as the ones cited by the Arbitrator cannot serve as a basis for the transfer of bargaining work to non-bargaining unit employees on a permanent basis. On

the other hand, Dow urges this Court to affirm the Arbitration Award, arguing that there is no legitimate basis to set it aside because it drew its essence from the CBA. Dow also argues that the statute of limitations for seeking to set aside arbitration awards was not complied with in this case. Each argument will be taken in turn.

After very carefully reviewing the substantial and well-prepared submissions of both parties, the Court concludes that the Award issued by the Arbitrator should not be disturbed.[4] The Award in this case "draws its essence" from the CBA and is not based on the Arbitrator's "own brand of industrial justice." *Enterprise Wheel*, 363 U.S. at 597, 80 S. Ct. at 1361. Furthermore, the Arbitrator did not exceed the contractual authority granted to him under the CBA. *See* 9 U.S.C. § 10(a)(4).

*A. Arbitrator's Interpretation of the CBA and Award*

The Union first argues that the Arbitrator allowed for the assignment of bargaining work to non-bargaining employees for a non-specified emergency reason. Upon careful analysis of the Award, this argument must fail.

The CBA clearly vests authority in the Arbitrator to resolve jurisdictional disputes. The Arbitrator in this case recognized that the dispute before him was one of contract interpretation, and in making his determination whether Dow had violated the terms of the CBA, he analyzed the contract in its entirety. He first noted that the CBA prohibits the assignment of bargaining unit work to non-bargaining unit employees, except in the case of emergencies as defined in the contract. Emergencies are the *only* permissible invasions of the Union's jurisdiction. Article II of the CBA provides that "certain work comes within the jurisdiction of the UNION and only in cases of emergency may

[4]The Court would like to take this opportunity thank Counsel for the excellent briefs submitted in this matter. This Court's job is made far easier when the motions before it are well-prepared.

employees, other than those represented by the UNION, be assigned to work within this recognized jurisdiction." Article II defines "emergency" as "a fire, explosion, flood, hurricane, storm, line rupture, or power failure which requires immediate action, or *any condition which endangers life, health, or property*." The term "condition" is not defined nor is it limited by the CBA, and as such it must be giving its plain and ordinary meaning. Article II of the CBA also provides that "the principles of jurisdiction must be applied with *common sense and some flexibility* in order to give the proper consideration to the practical problems of production involved," and that "the UNION agrees to apply a *rule of reason* consistent with the above circumstances in connection with jurisdictional questions arising under this contract." (emphasis added.) Given the broad and flexible language of the contract, the Court cannot in good conscience find that the Arbitrator's interpretation exceeded his authority under the CBA.

The Arbitration Award clearly recognizes that the only invasion of the Union's jurisdiction permitted by the CBA is emergencies, and that the brine positions eliminated by Dow were within the exclusive bargaining unit jurisdiction of the Union. Under the terms of the agreement, emergencies, while specifically defined, also encompass a wide variety of circumstances that might endanger life, health and property without limit. The Arbitrator found that the "rule of reason" language in the context of the first paragraph of Article II was the Union's concession to the safety problems inherent in the petrochemical industry, and that the provision for emergencies manifests both Parties' concerns for safety. Further, he found that the term "emergency" as used in the CBA is subject to the "rule of reason" language. He concluded that the "rule of reason" and the requirement of "common sense and flexibility" recognize that occasionally invasions of the Union's jurisdiction must occur to assure that safety-related problems are dealt with quickly and with maximum flexibility. Furthermore, he found that the CBA must admit the possibility of some circumstances that could allow the transfer of

bargaining unit positions. The Union would apparently seek to have this Court ignore the broad language in the CBA in reviewing the Award.

At the Arbitration, Dow provided undisputed evidence that the chemicals involved are toxic, corrosive, and explosive, and that there were numerous occasions where hazardous gases or liquids had spilled and that the first responders to the spills and leaks did not know how to deal with the situations due to the dual operations that existed at the Stratton Ridge facility. That is, accidents were made more dangerous by the dual operations. Dow also presented evidence that the Stratton Ridge facility had the highest spill record among the seven company sites, and that all the other sites either performed one of the two operations, or if they did both, the operations were fully integrated. Additionally, Dow presented evidence of deterioration of the salt domes due to a lack of communication and coordination between the dual operations. The Arbitrator found that the company's consolidation of the operations at the Stratton Ridge facility did not violate the jurisdictional clause of the contract because "the safety concerns of the company [were] compelling." He also noted that the move eliminated jobs that constituted less than one percent of the Union's jurisdiction, which was *de minimis*, and that if the consolidation had affected a larger number of employees or had raised less compelling safety concerns, it would have violated the CBA. The Court finds that the Arbitrator applied the contract as it is written to the factual circumstances presented to him.

The Union argues that none of the emergency conditions specified in Article II of the CBA existed in this case. Specifically, that "safety concerns" does not rise to the level of an "emergency" as used in the contract. This interpretation ignores the fact that emergency is defined in part as "any condition which endangers life, health or property." There is no further qualification or quantification of the term "condition." At the Arbitration, Dow provided substantial, undisputed evidence that the conditions at the Stratton Ridge facility were endangering life, health and property. The Arbitrator

found these conditions produced compelling safety concerns, and that had the safety concerns been less compelling, he would not have upheld Dow's conduct. The Court concedes that the term "safety" is not specifically listed as an emergency in the CBA. However, the Court respectfully points out that the Union did not sign an agreement which by its terms requires a strict literal interpretation. First, it is entirely reasonable to interpret "conditions which endanger life, heath or property" to include significant safety concerns. The Arbitrator found that the evidence in this case showed that Dow's safety concerns were compelling and grounded in past and present problems at the Stratton Ridge facility. For example, Dow provided evidence of incidents in four separate years where spills of hazardous gases and liquids were either created or exacerbated by the dual operations. Second, the "common sense and flexibility" and "rule of reason" language provides for the possibility of a broader interpretation of the term "emergency." The Arbitrator's decision is a common sense decision. If the Union did not want flexibility built into the CBA, it should not have agreed to it. If the Union wanted to foreclose the possibility that compelling safety concerns could not constitute an emergency, it should have said so in the CBA or it should have defined "emergency" to include only acts of God. The simple fact is that the Union did not do so, and the Court is unable and unwilling to rewrite the CBA because the Union dislikes the consequences of its agreement. The Arbitrator allowed the assignment of bargaining work to non-bargaining employees for emergency reasons that reasonably fall within the scope of the CBA. The Arbitrator did not ignore any language of the CBA in making this determination. Instead, the Award reflects a well-reasoned and careful decision that took into account the entire jurisdictional clause of the CBA and applied that contractual language to the specific facts of the case.

The Union next argues that even if compelling safety concerns constituted an emergency within the meaning of the CBA, that the CBA does not contemplate the permanent removal of recognized bargaining work. The CBA does not discuss invasions of jurisdiction in terms of permanent or

temporary removal, it merely provides that "in cases of emergency" non-bargaining unit employees may be assigned to work within the Union's recognized jurisdiction. So, whereas the Union's prior argument advocated a strict, literal interpretation of the contract's provisions, it is now asking the Court to insert the term "temporary" into Article II. In the case of a temporary emergency, such as a power failure, the Court would be inclined to agree with the Union. However, the conditions that gave rise to the emergency in this case were not temporary conditions. They were structural problems that would persist so long as the Stratton Ridge facility maintained its dual operations. If an emergency is of a permanent nature, the CBA does not prevent a solution involving the permanent removal of jobs. The "rule of reason" and "common sense and flexibility" language further support the Arbitrator's decision.

When the Award is viewed in light of the language in the CBA that the "principles of jurisdiction must be applied with common sense and some flexibility" and that the Union agreed to apply a "rule of reason" in connection with jurisdictional questions, the Court cannot find that the Arbitrator's decision exceeded the scope of his authority. The Court acknowledges the Union's unhappiness with the Award. However, a party's dislike for the Arbitrator's decision does not provide a basis for vacating an Arbitration Award. If arbitration proceedings were merely another bite at the proverbial apple, subject to *de novo* review by trial courts, then there would be no purpose to arbitration and the FAA would be completely eviscerated. Plenary review of arbitration decisions would render them effectively meaningless. *See Enterprise Wheel*, 363 U.S. at 598–99. As such, the Court will not exceed its authority and re-arbitrate this dispute.

*B. Dow's Statute of Limitations Challenge*

In the alternative, Dow argues that the Union's lawsuit is barred by the applicable statute of limitations, and asks the Court to revisit the applicable statute of limitations governing lawsuits that

seek to set aside an arbitration award. Dow urges the Court to adopt the 90-day period set forth in the Texas General Arbitration statute. *See* TEX. CIV. PRAC. & REM. CODE § 171.088(b). Although the Court's decision to uphold the Award renders this argument moot, it will be discussed for purposes of any possible appeal.

In *Local 1013 v. Ingram Manufacturing Co.*, 715 F.2d 886, 889–90 (5th Cir. 1983), the Fifth Circuit held that the Texas catch-all statute of limitations of four years would govern lawsuits to set aside arbitration awards concerning collective bargaining agreements. Lawsuits involving labor arbitration awards are governed by § 301 of the LMRA. The timeliness of a § 301 suit is determined by reference to the appropriate state statute of limitations. *See United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 60–61, 101 S. Ct. 1559, 1562–63, 67 L. Ed. 2d 732 (1981) (citing *International Union v. Hoosier Cardinal Corp.*, 383 U.S. 696, 704–05 (1966)). At the time of *Ingram*, the 90-day statute of limitations of the Texas General Arbitration Act was not adopted because under the terms of the statute it did not apply to proceedings arising under collective bargaining agreements between and employer and a labor union. This is still the law in Texas. *See* TEX. CIV. PRAC. & REM. CODE § 171.002(a)(1).[5] As such, the reasoning behind the *Ingram* decision remains undisturbed and this the Court is bound to follow that decision until it is overruled by the Fifth Circuit. The Union filed its complaint to overturn the Arbitration Award on May 9, 2005, within four years from the date the award was issued on November 12, 2004. The Union's complaint was filed within the applicable statute of limitations. Of course, Dow is welcome to make its argument before the Circuit, as it is a policy decision best left to the purview of the Circuit.

---

[5]Recently, the Texas Supreme Court held that another subsection of § 171.002 was preempted by federal law. *See In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 69–70 (Tex. 2005). However, the provision regarding collective bargaining agreements remains in tact.

**IV. Conclusions**

For the reasons stated above, the Defendant's Motion for Summary Judgment seeking to affirm the Arbitrator's Award is **GRANTED**, and the Court **ORDERS** the enforcement of the Award. Plaintiff's Motion for Summary Judgment is **DENIED**, and all of Plaintiff's claims asserted against Defendant in this action are hereby **DISMISSED WITH PREJUDICE**. Each Party is to bear its own taxable costs, expenses, and attorney's fees incurred herein to date. A Final Judgment will issue contemporaneously with this Order.

**IT IS SO ORDERED**.

**DONE** this 11th day of January, 2006, at Galveston, Texas.

Samuel B. Kent
United States District Judge